IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**WILLIAM THOMPSON,**

       **Plaintiff,**

**v.**                                          **Case No. 2:11-cv-00409**

**JAMES RUBENSTEIN, Commissioner,
West Virginia Division of Corrections,
DAVID BALLARD, Warden, Mount Olive
Correctional Complex, DR. HUMA RASHID,
JOHN AND JANE DOE, Employees of Wexford
Health Sources, Inc., all sued in their individual
and official capacities, and WEXFORD HEALTH
SOURCES, INC.,**

       **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the court are the Renewed Motion to Dismiss filed by defendants John and Jane Doe, Employees of Wexford Health Sources, Inc., Dr. Huma Rashid and Wexford Health Sources, Inc. (hereinafter "the Wexford Defendants") (ECF No. 22) and the Renewed Motion to Dismiss filed by defendants David Ballard and James Rubenstein (hereinafter "the DOC Defendants") (ECF No. 23.)[1] This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

---

[1]  The undersigned notes that these Renewed Motions to Dismiss incorporate by reference the arguments made in the Memoranda in Support (ECF Nos. 12 and 14) of the defendants' initial Motions to Dismiss (ECF Nos. 11 and 13), which were filed prior to the plaintiff being granted leave to file his Amended Complaint.  The initial motions were denied as moot; however, the undersigned will consider the arguments made in the Memoranda (ECF Nos. 12 and 14) when addressing the Renewed Motions to Dismiss (ECF Nos. 22 and 23).

## PLAINTIFF'S ALLEGATIONS

On September 15, 2011, the plaintiff filed his Amended Complaint alleging that the defendants had denied him medical care in violation of the Eighth Amendment to the United States Constitution.  The plaintiff also alleges state law claims of negligence and breach of contract.  The plaintiff has named the following defendants:  James Rubenstein, the Commissioner of the West Virginia Division of Corrections, David Ballard, the Warden at the Mount Olive Correctional Complex ("MOCC"), Dr. Huma Rashid, Medical Director for Wexford Health Sources, Inc. ("Wexford") at MOCC, and John and Jane Doe, Employees of Wexford.

The plaintiff's Amended Complaint alleges that the plaintiff suffers from "atrial fibulation" [sic; fibrillation] and "atrial flutter," cardiac conditions in which his heart beats out of rhythm.  According to the Amended Complaint, in 2007, the plaintiff was treated by a cardiologist outside of the prison, who prescribed special medications and shocked his heart back into rhythm.  (ECF No. 20 at 5, ¶11.)  The Amended Complaint further alleges that, in December of 2010, Dr. Rashid determined from an EKG that the plaintiff's heart was in atrial fibrillation.  (*Id.*, ¶ 12.)  At that time, however, the plaintiff was taken off his current medication, Rythmol, and placed on Amiodarone, which the plaintiff alleges is a less expensive, and less effective medication.  (*Id.*, ¶ 13.)

The Amended Complaint further alleges that, between January and March of 2011, his heart was still out of rhythm.  He was seen approximately five times by a physician's assistant at MOCC before Dr. Rashid took over his treatment.  The plaintiff further alleges that, despite another EKG result indicating that the plaintiff's heart condition had worsened, Dr. Rashid refused to allow the plaintiff to be sent to an outside facility for further treatment.  (*Id.*, ¶¶ 14-17.)

2

The plaintiff further alleges that, in March of 2011, Dr. Rashid told the plaintiff that he had obtained permission from Warden Ballard to allow the plaintiff to be seen at an outside hospital in the near future.  (*Id.*, ¶ 18.)  An Affidavit provided with the plaintiff's Response to the defendants' Motions to Dismiss indicates that, in June of 2011, the plaintiff was examined at Montgomery General Hospital by Dr. Ravin Bhirud, who did an echocardiogram.  Then, on July 7, 2011, Dr. Bhirud initiated a medical procedure to put the plaintiff's heart back into rhythm.  (ECF No. 25-1.)

The plaintiff alleges that the delay in providing adequate treatment for his heart condition constituted deliberate indifference to a serious medical need, as well as negligence.  (*Id.* at 10-11, ¶¶ 1-3.)  The plaintiff further alleges that the acts and omissions by the defendants constituted a breach of the contract between Wexford and the West Virginia Division of Corrections, with the plaintiff being a "tertiary beneficiary" of the contract.  (*Id.* at 11, ¶ 4.)  The plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages, against each of the defendants.  (*Id.* at 11-15.)

## STANDARD OF REVIEW

In *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Id.* at 555.

3

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

The defendants' motion will be reviewed under Rule 12(b)(6) of the Federal Rules of Civil Procedure and the *Twombly/Iqbal* standard.

## **ANALYSIS**

### A.    **The plaintiff's claims for declaratory and injunctive relief are moot.**

Before addressing the specific arguments made by the defendants in their Motion to Dismiss, the undersigned must address the plaintiff's claims for declaratory and injunctive relief.  To the extent that the plaintiff is seeking declaratory or injunctive relief concerning the conduct of the defendants, those claims are moot.  The power of the federal courts to adjudicate claims turns on the existence of a case or controversy.  U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

"When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue." *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.")

The plaintiff has been transferred to the Northern Regional Jail and Correctional Facility, which is located within the jurisdiction of the United States District Court for the Northern District of West Virginia.  Thus, any claims for declaratory or injunctive relief against the defendants at MOCC were mooted at the time of his transfer.  Moreover, prior to his transfer, the plaintiff was treated by an outside cardiologist.  Thus, at that point, his requests for an Order to be treated by an outside cardiologist were also moot.  For these reasons, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's requests for declaratory and/or injunctive relief made by the plaintiff are moot, and must be dismissed.

### B.   The claims against the DOC Defendants in their official capacities are prohibited under the Eleventh Amendment to the United States Constitution.

Defendants Rubenstein and Ballard contend that, to the extent that the plaintiff's claims are asserted against them in their official, as opposed to their individual capacities, the plaintiff is seeking retroactive monetary relief from the State, which is prohibited by the Eleventh Amendment to the United States Constitution.  In *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), the Supreme Court stated:

> Obviously, state officials literally are persons.  But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself.  We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983.  The judgment of the Michigan Supreme Court is affirmed.  [Citations omitted].

Based upon this authority, the defendants assert that they are immune from suit on the plaintiff's claims in their official capacities.  (ECF No. 14 at 4-5.)

The plaintiff's Response acknowledges that "retroactive monetary relief" would run afoul of the Eleventh Amendment.  However, the plaintiff asserts that "relief that serves directly to bring to an end a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury."  *Papasan v. Allain*, 478 U.S. 265 (1986).  The plaintiff further asserts that, "when a plaintiff seeks injunctive relief . . . or declaratory relief . . . , the court can likely fashion an adequate remedy without imposing a retroactive award or monetary relief to be paid from state funds."  (ECF No. 26 at 3.)

As noted by the defendants, pursuant to the Eleventh Amendment to the United States Constitution, the power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980).  The Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose a liability upon a State or State officials, which may be paid from public funds in the state treasury.  *Quern v. Jordan*, 440 U.S. 332, 337 (1979).  Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment.  *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).  Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds.  *Id.* at 337.  Moreover, a State is not a "person" for purposes of section 1983 litigation.  *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989); *Kentucky v. Graham*, 473 U.S. 159 (1985).

Among other forms of relief, the plaintiff is seeking retroactive monetary relief from State officials in this matter, which is barred by the Eleventh Amendment of the United States Constitution.  For this reason, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which monetary relief can be granted against the defendants in their official capacities.

### C.      The plaintiff's claims against the defendants in their individual capacities.

The plaintiff has alleged claims against all of the defendants in their individual capacities as well.  Specifically, the plaintiff has alleged claims of deliberate indifference to a serious medical need, in violation of the Eighth Amendment, and state law claims of negligence and breach of contract.  The undersigned will first address the deliberate indifference claims brought under section 1983, before turning to the state law claims.

### Deliberate Indifference Claims

In 1976, the Supreme Court set the standard for evaluating whether a prisoner's Eighth Amendment right to be free from cruel and unusual punishment was violated based upon a prison healthcare provider's deliberate indifference (subjective component) to the prisoner's serious medical needs (objective component).  *Estelle v. Gamble*, 429 U.S. 97 (1976); *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Addressing the objective component first, "serious medical needs" are those which have been diagnosed by a physician as mandating treatment or that are so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1976)).

The subjective component of "deliberate indifference" sets a high bar to recovery.  In *Iko*, a case involving excessive use of pepper spray by correctional officers, the Fourth Circuit wrote:

> An officer is deliberately indifferent only when he "knows of and disregards" the risk posed by the serious medical needs of the inmate. *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed.2d 811 (1994). ***

8

This court has identified two slightly different aspects of an official's state of mind that must be shown in order to satisfy the subjective component in this context.  First, *actual knowledge of the risk of harm* to the inmate is required.  *Young v. City of Mt. Ranier*, 238 F.3d 567, 575-76 (4th Cir. 2001); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("It is not enough that the officer [] *should* have recognized it.").  Beyond such knowledge, however, the officer must *also* have "recognized that *his actions were insufficient"* to mitigate the risk of harm to the inmate arising from his medical needs.  *Parrish*, 372 F.3d at 303 (emphasis added).

535 F.3d at 241.

The Motion to Dismiss filed by the Wexford Defendants asserts that the plaintiff cannot meet either the objective or subjective components of this standard.  The Wexford Defendants' Memorandum states:

The Plaintiff's Complaint outlines substantial efforts undertaken by Dr. Rashid and Wexford in treating his conditions.  He alleges outside treatments at hospitals, evaluations, reevaluations, observations, and the provision of prescription medication.  It may not be the precise treatment desired, but it is far from deliberate indifference.  Therefore, the Plaintiff has failed to allege a violation of his Eighth Amendment rights.

(ECF No. 12 at 6.)   The Wexford Defendants assert that the plaintiff's claims are premised on a disagreement between the plaintiff and his health care providers concerning the appropriate course of treatment, which is insufficient to state a deliberate indifference claim cognizable under the Eighth Amendment.  (*Id.* at 7-8.)

The DOC Defendants' Renewed Motion and Memorandum assert that they are entitled to qualified immunity on the plaintiff's claims because the plaintiff has "failed to articulate that either Defendant Rubenstein and/or Defendant Ballard engaged in any action that 'violate[d] [any] clearly established statutory or constitutional rights [of Plaintiff] of which a reasonable person would have known.'"  *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998); *Gomez v. W.J. Atkins*, 296 F.3d 253 (4th Cir. 2002).  (ECF No. 14 at 6.)   Accordingly, the DOC Defendants further assert that the plaintiff's Amended

Complaint against them be dismissed for failure to state a claim upon which relief can be granted, pursuant to *Iqbal.* (*Id.* at 6-8.)

The plaintiff's Response focuses on the contractual relationship between the West Virginia Division of Corrections and Wexford Health Sources, Inc., stating:

> The defendants acknowledge that Wexford Health Sources has a contract with the W. Va. Division of Corrections to provide medical services to inmates at Mount Olive Correctional Facility. As a for-profit corporation, it is in the corporation's best interest to minimize costs and maximize profit. Two physicians prescribed medication for plaintiff's heart condition. Plaintiff believes that policy decisions by Wexford Health Sources led to the substitution of a less efficacious medication for plaintiff's heart condition. Dr. Rashid's decision to change medication may have been predicated on corporate policy and the cost of the medication. This belief can only be substantiated when the defendants provide plaintiff with a copy of the current contract between Wexford Health Sources and the West Virginia Division of Corrections and Wexford's Policies and Procedures regarding cardiac care patients. Plaintiff would ask the Court to give him the benefit of the inferences to which plaintiff is entitled at the pleading stage of this proceeding, and find that plaintiff [h]as stated a potential claim against Wexford Health Sources, Inc. and Dr. Huma Rashid.

(ECF No. 26 at 10-11.) The plaintiff further asks the court to take supplemental jurisdiction over his state law claims and to recognize the plaintiff as a third party beneficiary of the contract between Wexford and the DOC. (*Id.* at 11- 12.)

The plaintiff's Response further asserts that, once the plaintiff filed his grievances about his medical treatment, the DOC Defendants had actual knowledge of Dr. Rashid's failure to properly treat the plaintiff's heart condition. The Response further asserts that the DOC Defendants failed in their responsibility to ensure that the prisoners in their custody receive adequate medical care. (*Id.* at 1-6.) The Response further asserts that a qualified immunity defense is not appropriately considered in a motion to dismiss. (*Id.* at 4-5, 7-8.)

The defendants' Reply briefs simply repeat the arguments made in their Memoranda in support of their Renewed Motions to Dismiss. (ECF Nos. 28 and 29.)

Based upon the facts alleged in the Amended Complaint, it appears that the plaintiff was seen on a regular basis and attention was given to his complaints of atrial fibrillation and atrial flutter. The plaintiff was regularly given medication; albeit medication that he believes was less effective than that previously prescribed. The plaintiff was ultimately treated by an outside cardiologist, who performed a procedure to return the plaintiff's heart to a normal rhythm. The plaintiff has alleged nothing more than a disagreement with the course and timing of his treatment.

Taking the plaintiff's allegations as true, and in the light most favorable to the plaintiff, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not sufficiently alleged that Dr. Rashid or any other Wexford employee (named herein as John and Jane Doe Employees) acted with deliberate indifference to his serious medical needs.

The plaintiff's Response also specifically alleges that Wexford Health Sources, Inc. has either tacitly authorized or condoned its employees' deliberate indifference to serious medical needs, and that Wexford has insufficient policies, customs or procedures for providing timely and adequate care for prisoners who suffer from severe pain, which has resulted in unnecessary delay in treatment and proximately caused the plaintiff to needlessly suffer additional pain.

"A private corporation is liable under § 1983 . . . when an official policy or custom causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999); *see also Motto v. Corr. Med. Servs.*, 2007 U.S. Dist. Lexis 72436 (S.D. W. Va., Sept. 27, 2007) (Johnston, J.). However, because the plaintiff has

failed to state a claim of deliberate indifference against any of the individual defendants, it is not necessary to further address the plaintiff's claim against Wexford Health Sources, Inc., and the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a claim against Wexford Health Sources, Inc.

Turning to the DOC Defendants, the plaintiff's claims against the DOC Defendants appear to be based entirely on the actions of those defendants in denying the plaintiff's grievances concerning his medical treatment.  Public officials, such as the DOC Defendants, are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known.  *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law."  *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the allegations do not give rise to a constitutional violation, no further inquiry is necessary.  *Id.*  If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case.  *Id.*

Furthermore, as noted by the DOC defendants, it is well-settled that prison officials are entitled to rely upon the professional judgment of trained medical personnel.  *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *Shakka v. Smith*, 71

F,3d 162, 167 (4th Cir. 1995). Thus, to establish a claim of deliberate indifference against non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, or that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct. *Miltier*, 896 F.2d at 853.

Because the plaintiff's Amended Complaint has not sufficiently alleged deliberate indifference claims against the medical providers who treated him, he cannot sufficiently allege deliberate indifference claims against the DOC Defendants, who were entitled to rely upon the professional medical judgment of the health care providers when reviewing the plaintiff's grievances concerning his medical treatment. Accordingly, the undersigned proposes that the DOC defendants should be accorded qualified immunity on the plaintiff's claims against them.

Therefore, the undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's Amended Complaint fails to state a claim upon which relief can be granted against defendants Rubenstein and Ballard.

### State Law Claims

The plaintiff's negligence and breach of contract claims are grounded in state law. Section 1367 of Title 28 provides the United States District Courts with jurisdiction to consider state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Under 28 U.S.C. § 1367(c), a district court may decline to exercise its supplemental jurisdiction over a claim in certain circumstances, including where all of the claims over which the court has original jurisdiction have been dismissed. Here, the undersigned has recommended the

dismissal of all of the claims over which this District Court has original jurisdiction. Thus, the presiding District Judge may decline to exercise supplemental jurisdiction over these state law claims.

### RECOMMENDATION

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the defendants' Renewed Motions to Dismiss (ECF Nos. 22 and 23), decline supplemental jurisdiction over the plaintiff's state law claims, and dismiss this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendations is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendations within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendations to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Copenhaver.

14

The Clerk is directed to file this Proposed Findings and Recommendations and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

March 27, 2012

Mary E. Stanley
United States Magistrate Judge

15